Good morning, Your Honor. My name is Terry Ryan. I am appointed counsel on appeal for Mr. Michael Briggs, who was convicted of two conspiracy counts for possession of narcotics and possession of weapons. And I'm sure the court is aware that this is a case where the defense alleged that these were made up conspiracies. The case went to trial twice, and I think that's important, that there was a hung jury in the first trial, and the matter went to trial a second time. And it's during the second trial when the prosecution engaged in what I consider to be abuses, which are reversible error. The prosecutor started right off in the trial by stating, we believe that the evidence is sufficient. And this type of opening statement is, I think, quite prevalent, especially in federal court. When the government, the prosecutor, tells the jury that we believe, and I frankly don't know who we they're referring to is or are, but they're calling upon the jury to think that there's some weight or substance to his opinion. And so what happens is the prosecution is vouching for all of the witnesses in the case. I can hear the jurors now in the jury room. Was there any objection to that comment during the opening statement? No, there was not. My view is that that's really the least of it. But during the cross-examination, there was many times when the prosecutor in effect testified and otherwise seemed to go off the reservation in many ways. The judge tried to rein him in, and the real question is whether he did so sufficiently. Exactly. That's my whole argument. Well, that's not an argument. That's a question. Did he rein him in sufficiently? Did he rein him in? Oh, I didn't hear the did part. Did he rein him in? No. He should have said, hey, Mr. Prosecutor, you're out of control. You need to stop asking those types of questions. My background as a prosecutor and defense attorney is very organized. As a prosecutor, you ask the questions about the elements, and then you get off and you let the defense put on his case. Here, the prosecutor grilled the defendant about whether he was a family man, whether he took care of his kids. The prosecutor got into evidence, things that should never have gotten into evidence, things about his brother being a member of a gang. There was no evidence that his brother was a member of a gang, but you got some government witness saying, yeah, he's a gang member. The prosecutor got into evidence and opinion from one of his federal investigative witnesses that Mr. Glenbriggs, the brother, was the worst of the worst. And so throughout the prosecution's case, you have this tainting of the evidence in the second trial. And rather than a hung jury in the second trial, then all of a sudden we have convictions on both counts. I think one of the cases- You want to turn to the sentencing issue? The sentencing issue? You claim it's an unreasonable sentence. Well, I felt it was unreasonable based upon the fact that the crime was a made-up crime. The investigative officers said, hey, why don't we try this? There was never going to be a home invasion robbery. There were no drugs. There were no guns. But we've held that reverse sting operations or sting operations like that are permissible. So what's the fact that it's made up? What's the legal principle we're assessing here? I think it's whether it is abusive or not. And certainly reverse stings are accepted by the courts. But in this case, you're dealing with a Glen Briggs who's got an IQ of about 70 and his brother who's not much better. And there's tavern talk, and there's some drinking going on, and all of a sudden one of the agents says, hey, do you think you guys can do a home invasion robbery? And there's still more tavern talk, and yeah, we can do it. And there's some talk about getting some drugs and selling them and making some money. Just to clarify, you're not arguing at this point about the entrapment as such. You're arguing about what we call essentially about how it affected the sentencing. Is that right? That's correct. All right. And in the Williams case, which is the reverse sting case, that wasn't the case. Is that right? In other words, there was not an issue in Williams, as I understood it, about whether the government said how much they were going to steal and thereby managed to increase the debt substantially. That was not the issue in Williams. Is that right? I didn't hear your question. Was the issue in Williams a straight entrapment issue or a sentencing entrapment issue? In other words, in Williams, the argument was that this should have been entrapment with regard to the conviction. And it wasn't as to the incremental amount of the drugs that were being stolen. Right? I'm not familiar with the Williams case, Your Honor. Isn't that the case in which the reverse sting operation was approved? It was a Judge Bivey opinion not too long ago. I can't say. I can find out. Well, that's not helpful then. The prosecution also got in testimony that the defendant was guilty by association, and as I had indicated before, one of the officers testified that Glenn Briggs was the worst of the worst that we're targeting. And then they also got in evidence that Glenn Briggs had gang associations and the other co-defendant, former co-defendant, Julian Mora, was suspected, not convicted, but suspected of a drive-by shooting. So I think that all of this taken separately maybe doesn't cause the court to say, hey, we need to reverse here. But all of it taken together shows the defendant didn't have a fair trial in this case, especially during the cross-examination of the defendant. When the prosecution asks a defendant if he's lying, that's just plain error right there. What he asked him was whether other people were lying. He did that also. And we have case law saying explicitly you can't do that. Right. It was done several times in this instance, was it not? Pardon me? I think it was done several times in this instance, was it? At least twice, as I recall. Again, I wasn't the trial attorney. And the record to me was so difficult to ascertain as to what happened because it was disjointed. And then the prosecutor became abusive himself. He at one point said, Mr. Briggs, I'm having a hard time with this too-drunk-to-remember thing. The prosecutor wouldn't allow the defendant to answer questions. And finally, the judge, Suos-Ponte, had to jump in and say, let him finish the answer. And then the prosecutor, what I call testified, when one of his questions really wasn't a question, it was, quote, that's not what the tape says at all, unquote. So I think that the error in this case, in part, is because of the inexpert cross-examination on the part of the prosecution. And that prejudiced the defendant. Okay. You want to save the rest of your time for rebuttal? Yes, thank you. May it please the Court, I'm James Gaykey representing the United States in this matter. May it please the Counsel. Were you the trial counsel? I was not trial counsel. I didn't think so. First, I'd like to address the issues the defense counsel raised about the alleged prosecutor's misconduct. These issues have to be looked at from the perspective of whether any alleged issues caused him to be prejudiced, such the fact that he should get a new trial. All of the issues we have here on this record were dealt with by the trial court. Many of the issues that they discussed in the brief as alleged prosecutor's misconduct or issues that prejudiced the defendant were actually sustained objections. The issue of the gang affiliation issue was objected to, but it was overruled. And we have to remember on this record that this defendant was charged with Glen Briggs in a conspiracy. So issues related to Glen Briggs and Mr. Moore are relevant in terms of the fact that they are charged in a conspiracy, and that's the intent of one. And as for the issue of vouching, that while it was an error, we believe issue, it was an issue that the prosecutor in his opening statement said himself, the arguments of counsel, i.e., him, are not evident. He advised the jury of that himself, as did the court's jury instruction. So that's the issue of vouching in the opening statement, I believe, is a non-issue. We have case law. He was asked several times. These are the two things that bother me about the cross-examination. This we believe thing didn't bother me at all. That seems silly. But the other two. The two things that bothered me were, first of all, that he was asked repeatedly whether the government witnesses were lying. And we have case law that specifically says you can't do that, and that the questions were improper. This is the Gesting case, for example, to offer opinions regarding the veracity of government witnesses, and then the question is whether there's reversible error. And as here, interestingly enough, in Gesting, they say the first rule, which didn't include the improper questioning, resulted in a mistrial, and that leads us to conclude that the improper questioning impacted his due process rights. Why isn't that exactly this? In Gesting, if I remember the facts correctly, there were multiple government witnesses who were asked to testify, asked about the truthfulness of multiple additional witnesses. We have a situation here where the defendant takes the stand out of his own volition. He is asked about the truthfulness of one government witness, and it's an issue that the defendant makes an issue of a trial. The defendant says them multiple times in his testimony, alludes to any reasonable jurors can understand it to be a statement that the government witnesses, these agents are lying. He says it. So it's not unreasonable for the prosecutor to then follow up that line of questioning and also inquire of the defendant, so you think those people are lying. It's not. The prosecutor didn't need to ask the question to have the defendant already have commented on the truthfulness of the witnesses. It doesn't rise to the level of Gesting. All right. But then also, it seems to me that the prosecutor wasn't points testifying. He was saying this isn't what you said isn't true, and then that's not what the tape showed, and so on and so on. There were points where some of the questions may have been somewhat narrated from the prosecutor. I will concede that. But they were all issues that were cured by the trial court at the time or were not objected to, and none of it amounts to, on this record, to material error such that this defendant, she received a new trial. I find the whole cross-examination a little over the top. I found the cross-examination to be a little aggressive, but I didn't think it was impermissibly so. The parties in this case performed their functions. The prosecutor asked driving and aggressive questions. Defensive counsel objected when it was appropriate. Many of those objections were sustained. Some were overruled. The court performed its function such that by the time we got to the verdict, this is the record on these facts does not require a new trial. I'd like to address the issue that the court raised also about the sentencing entrapment issue. Many of those concerns, this is an issue that is for the purposes of what was the drug quantity, was that the number that was the government impermissibly using a high drug quantity to drive the sentencing here. To the extent that's even an issue in this case, it's resolved by the court's application of 3553 factors. The defendant's guideline range on these convictions was 235 months to 293 months on count one, 235 months to the mandatory, to the maximum sentence of 240 months on count two. The court departed down to 132 months, which is nearly 12 months over the mandatory minimum for count one. To the extent there's any concern with regard to this defendant with the quantities the government was using in its reverse sting operation, which has been allowed by this court, as the Williams case allows and other cases across the country allow it, this is a permissible investigative tactic. To the extent there's any concern that these drug quantities were impermissibly used to drive this defendant's sentence, it didn't occur in this case because it was washed out by the time we got to sentencing. The court. And Williams, one thing that struck me about Williams was that it was the ultimate charge both here and in Williams was really not the robbery but possession with intent, the conspiracy to possess with intent to distribute. That's correct. And in Williams, it was clear that he distributed huge quantities of drugs. But here it was not. Michael Briggs distributed none and Glenn Briggs, as far as one could tell, distributed very small quantities. So why isn't that a problem? But it didn't change his disposition. Glenn Briggs, the record is clear. He pled to eight counts, most of which are drug distribution counts. He clearly had the mens rea to distribute as much as he possibly could. And this defendant, Michael Briggs, made it clear on tape, on the record, that he was eager to get whatever quantity of drugs he possibly could. He might have been eager, but he probably wasn't able. He was able through his brother. I mean, his brother is a drug dealer. He's charging a conspiracy with regard to this home invasion. His brother has plied out the numerous. I mean, it's uncontroverted that his brother dealt drugs, and he dealt drugs to undercover officers. And there are other cases to which he pled guilty. So it's reasonably foreseeable that Michael Briggs could easily use the distribution channels his brother has established to deal with whatever quantity of drugs. How would you characterize the standard by which the court should determine under the sentencing and treatment doctrine whether the quantity is, I don't know, outrageously excessive or something of that nature? I mean, what's the standard? There isn't really clear guidance in the case, at least that I could discern in terms of when it's, it goes to kind of the banana factors and whether these, the capability of these defendants, the capability of this conspiracy. And, again, it's the capability of the conspirators, not just Michael Briggs himself. He's charging a conspiracy with his brother. And they were also looking at in terms of there's the standing issue. The standing issue is important because you're looking at Glenn Briggs is the target of this reverse thing. Michael Briggs was brought in by his brother. The record makes it pretty clear. Glenn Briggs is the target of this. Well, let me ask this. We're not on his case yet. I mean, should a different standard be used for Glenn Briggs than for Michael Briggs? I would argue not. I would argue look at that. Look, this is a Bogart issue as it applies to Michael. He's much like some of the co-defendants in the Williams case. Some of them had very periphery roles, but their convictions weren't thrown out. They were brought into the case by Mr. Williams. Their convictions stood. The issue of sentencing entrapment as it applies to Michael was dealt with adequately, very adequately by the trial judge, and appropriately so, on his analysis of the 3053 factors in terms of his ultimate sentence. But he didn't, the trial judge didn't peg that on the amount charged, right? In terms of the reduction? Yeah. He pegged that on a variety of factors, and that clearly had to have been one of the factors that led him to, it was clear that the judge did not feel constrained by the guidelines in the drug quantity announced to impose a sentence of 235 to 293 months. He exercised his discretion, I can't say inappropriately so, to reduce the sentence as it applied to this defendant. He fashioned a sentence that was appropriate for Michael Briggs. Okay. You got an inadvertent five minutes free, uncounted time, so you're really out of time. So I think unless there's anything important you need to say, I think you can wrap up. Thank you. Thank you. Thank you. I'd like to address two things. One thing that the prosecutor said was that Glenn Briggs, the brother, dealt drugs and a reasonable inference can be drawn. I don't see how you can draw a reasonable inference that Michael Briggs is engaged in criminal activity when his brother is acting alone and engaged in criminal activity. There was no evidence that Michael Briggs was engaged in any criminal activity. And that gets me into my second point, that one of the judges asked about the Williams case, and I was focused in on the Bonanno case and the Bonanno factors. And if you take a look at page 31 of the government's brief, it sets out those Bonanno factors. And the first Bonanno factor is that the defendant was already involved in a continuing series of similar crimes, or the charged criminal enterprise was already in progress. And neither one of those apply to Michael Briggs. Michael Briggs lived across the street from the tavern on occasion, went to the tavern to drink with his brother, and all of a sudden he finds out that he's allegedly committing two federal crimes and is facing a long time in prison. Thank you. Thank you very much. We appreciate the arguments. And this case is submitted.
judges: Tashima, Fisher, Berzon